**Opinion filed September 29, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00101-CV

_____

## IN THE INTEREST OF A.O., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Case No. 10672-CX**

### MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the mother and the presumed father to A.O. Only the presumed father appeals. In a single issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that the termination of his parental rights is in the best interest of A.O. We affirm.

*Termination Finding and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has

committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (O). Appellant does not challenge these findings on appeal.

The trial court also found that termination of Appellant's parental rights would be in the best interest of the child. *See id.* § 161.001(b)(2), 161.003(a)(5). In his sole issue on appeal, Appellant challenges both the legal and factual sufficiency of the evidence to support the trial court's best interest finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the

2

programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* To support a best interest finding, the Department is not required to prove all of the *Holley* factors; in some circumstances, evidence of the presence of only one factor will suffice. *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parental relationship and the parent's conduct has endangered the safety of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo [Panel Op.] 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of a child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

3

Further, the factfinder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *Id.*; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.). The factfinder may also consider a parent's failure to comply with a court-ordered family service plan for reunification with the child in making its best interest determination. *In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013); *In re E.C.R.*, 638 S.W.3d at 769 (citing *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.)).

*Procedural and Factual Background*

The Department of Family and Protective Services (the Department) became involved in this case within days of A.O.'s birth. The intake occurred following allegations of drug use by the parents. The Department took custody of the child on April 8, 2022, and placed A.O. in temporary foster care. During this time, a foster family that planned to adopt A.O. had visitations with her, and if she were to become available for adoption, the foster parents would like to adopt her. In January 2023, the Department moved A.O. from temporary foster care to the home of that foster family. The permanency case manager testified that A.O. required some occupational and physical therapy due to delays at birth, but that she was doing "wonderful" in the foster family's home and was receiving "lots of love and support." The permanency case manager testified that she had seen A.O. in her new placement, and that she appeared to be bonding with the foster family, who were meeting all of A.O.'s needs.

Appellant initially had visitation with A.O., but the Department suspended Appellant's visitation in December 2022 because the visitations "were not stable" and "not supportive." According to the permanency case manager, Appellant and the mother would fight during visitations, and they were inconsistent in checking in

4

and appearing for scheduled visitations; the permanency case manager testified that "it just was all over the place." The trial court ordered Appellant to comply with a family service plan, which required Appellant to complete a substance abuse assessment, undergo drug testing, complete a psychological evaluation, participate in individual counseling, and complete parenting education courses.[1]

Appellant failed to comply with multiple portions of the family service plan. He did not complete the ordered psychological evaluation and failed to attend court-ordered individual counseling. After testing positive for methamphetamine in April of 2022, he was ordered to take monthly drug tests. He complied with two monthly drug tests; he tested positive for amphetamine and methamphetamine in July 2022 but negative on all substances in August 2022. After these two drug tests, Appellant did not appear for any further appointments. Additionally, Appellant never reported to have any stable housing or employment as required by the family service plan.

The permanency case manager estimated that she saw Appellant at about "eight different residences" during the eleven months that the case was open to either "visit" or "pick[] him up for a visit"; she testified that Appellant was staying at "a different place every time." She testified that Appellant never provided her with information about or contact information for the persons he stayed with, and that Appellant only notified her "once or twice" about any change of address. The permanency case manager was also unable to find or make contact with Appellant in the month preceding the trial. She told the trial court that her primary means of contacting Appellant was by calling or texting, because Appellant had "ten or twelve" contact phone numbers. When the permanency case manager was unable to

---

[1]The mother executed an affidavit of voluntary relinquishment of her parental rights to A.O. in March of 2023.

find Appellant, she would send messages to every past contact for Appellant "just in case." The permanency case manager would also try to contact Appellant's sister when Appellant did not respond. Despite her efforts, the permanency case manager testified that her last contact with Appellant was in court three months prior to the hearing, on January 18, 2023.

*Analysis*

In Appellant's sole issue, he asserts that the evidence presented at trial was legally and factually insufficient to prove by clear and convincing evidence that the termination of his parental rights would be in the best interest of A.O.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of A.O. *See Holley*, 544 S.W.2d at 371–72.

As set forth above, the Department presented clear and convincing evidence that Appellant failed to comply with numerous provisions of the court-ordered family service plan. These failures to comply highlight specific evidence that supports the trial court's finding that termination was in the best interest of A.O. Appellant never reported any employment, and he had not submitted to a drug test since August 2022. Appellant did not have any permanent housing; he changed residences at least eight times during the eleven months that the case had been open and did not report with whom he was staying. Appellant did not make use of any programs made available to him. He did not complete the psychological evaluation

6

and did not participate in court-ordered individual counseling, despite the prospect of losing his parental rights if he failed to comply. Further, Appellant lost his visitation privileges because he was inconsistent in attending scheduled visits and was unable to provide a stable environment for A.O., even for the short visitation periods.

Clear and convincing evidence supporting A.O.'s current placement as being in her best interest was presented at trial. Although A.O. is too young to express her desires, the permanency case manager testified that the foster family was meeting A.O.'s needs and that they were mutually bonding. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."). The permanency case manager testified that, if the trial court terminated Appellant's parental rights, the current foster parent planned to adopt A.O.; she further testified that she had no concerns with the foster parent's ability to care for the child up to and beyond adulthood. In contrast, Appellant had not seen A.O. since December 2022, when his visitation rights were suspended. Appellant failed to follow the court-ordered family service plan, he reported no stable employment or housing, and the permanency case manager observed none. The trial court's findings under Section 161.001(b)(1)(E) and (O),[2] which are not disputed by Appellant, support the court's best interest finding. *See C.J.O.*, 325 S.W.3d at 266.

---

[2]Section 161.001(b)(1)(E) provides that a trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(E). Section 161.001(b)(1)(O) provides that the

Appellant did not appear at the termination hearing. On appeal, Appellant does not provide any explanation regarding why he did not appear for the trial. *See In re A.B.*, No. 02-23-00124-CV, 2023 WL 5615870, at *8 (Tex. App.—Fort Worth Aug. 31, 2023, no pet. h.) (considering under *Holley* that the appellant "gave no explanation for her absence in her children's lives and her failure to appear at trial."). Appellant does not explain, dispute, or otherwise attempt to mitigate his behavior. He merely contends that the evidence was insufficient because the State only established some of the *Holley* factors.

Appellant also argues that there was no evidence presented that adoption was necessary and that the State could maintain a permanent managing conservatorship without terminating Appellant's parental rights. "The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re R.S.-T.*, 522 S.W.3d 92, 113 (Tex. App.—San Antonio 2017, no pet.) (quoting *Dupree v. Tex. Dep't of Protective & Reg. Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ)). The evidence shows that Appellant has failed to provide, among other things, a stable and permanent drug-free home. The evidence shows that despite ample opportunities to amend his behavior, Appellant did not.

Considering the record as it relates to the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individual or individuals seeking custody, the plans for the child by the individual or individuals seeking custody, the stability of the home or proposed placement, and the acts or omissions of the parent which

---

trial court may do so if it finds by clear and convincing evidence that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." *Id.* § 161.001(b)(1)(O).

may indicate that the existing parent-child relationship is not a proper one, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. We defer to the trial court's findings as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we hold in this case that the trial court's findings as to best interest are supported by clear and convincing evidence. Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS

JUSTICE

September 29, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.